Mark Edward DOWLING, Plaintiff,

v.

Robert HANNIGAN, et al., Defendants.

No. 94–3467–KHV.

United States District Court,
D. Kansas.

June 25, 1997.

Mark Edward Dowling, Lansing, KS, pro se.

Lawrence J. Logback, Hsing Kan Chiang, Office of Attorney General, Kansas Judicial Center, Topeka, KS,

### Memorandum and Order

VRATIL, District Judge.

This pro se action comes before the Court on *Defendants' Motion For Summary Judgment* (Doc. # 59) filed October 1, 1996;[1] plaintiff's *Motion for Stay of Proceedings* (Doc. # 68) filed February 27, 1997; plaintiff's *Motion and Brief in Support of Injunction* (Doc. # 69) filed March 4, 1997; and plaintiff's *Motion to Supplement Motion for Injunction* (Doc. # 72) filed March 17, 1997.[2]

Plaintiff filed this action under 42 U.S.C. § 1983 while confined at the Hutchinson Correctional Facility in Hutchinson, Kansas. Defendants are two correctional officers, Sergeant Lavon Dunn and Lieutenant Gordon Brown, each sued in his individual and offi-

---

1. In accordance with the Court's *Memorandum and Order* (Doc. # 62) filed October 29, 1996, plaintiff verified that he did not receive defendants' motion in a timely manner, and plaintiff's *Motion to File Response to Summary Judgment Out of Time* (Doc. # 61) filed October 28, 1996, is therefore sustained. The Court gives full consideration herein to plaintiff's *Motion in Opposition to Summary Judgment* (Doc. # 63) filed November 4, 1996.

2. In his *Motion for Stay of Proceedings* (Doc. # 68) filed February 27, 1997, plaintiff requests a stay of proceedings for 30 days or until his legal materials are returned or, alternatively, an injunction commanding defendants to return his legal materials. Plaintiff's *Motion and Brief in Support of Injunction* (Doc. # 69) filed March 4, 1997, and plaintiff's *Motion to Supplement Motion for Injunction* (Doc. # 72) filed March 17, 1997, concern the same materials. Plaintiff's legal materials were returned after he filed such motions, and his requests are therefore moot. Accordingly, plaintiff's motions are overruled.

cial capacity.[3] In this action, plaintiff alleges that defendants violated his rights under the Fifth, Eighth and Fourteenth Amendments by failing to protect him from or warn him of an impending attack by another inmate. Plaintiff seeks monetary, injunctive and declaratory relief.

In addition, plaintiff asks the Court to enjoin the Kansas Department of Corrections ("KDOC") and Ms. Charlene Jackson, a Unit Team Manager for the KDOC at the Lansing Correctional Facility in Lansing, Kansas ("LCF"), from confiscating plaintiff's legal materials in the future.[4]

## Factual Background

The following material facts are uncontroverted or, where controverted, viewed in the light most favorable to plaintiff.

On August 11, 1994, Lt. Brown received an unsigned note which warned that an inmate, Dan Lyman, was going to injure or kill plaintiff because plaintiff had informed prison authorities of Lyman's drug violations. Prison authorities searched Lyman's cell that same evening and denied Lyman yard privileges. Lt. Brown advised the oncoming shift supervisor of the note and suggested that Lyman be searched before the evening meal. Prison authorities searched Lyman before the evening meal and again denied him yard privileges.

The following day, August 12, 1994, Lt. Brown interviewed Lyman. Lyman denied the accusations contained in the warning note. Prison authorities did not interview or contact plaintiff regarding the warning note, and they took no further protective measures.

On the evening of August 12, plaintiff and Lyman were in the "medication line," outside their cellhouse near the "Rotunda Post."

Sgt. Dunn supervised this line. Lyman attacked plaintiff between 9:00 and 9:09 p.m., cutting his face and throat with a weapon fashioned from a razor blade and a toothbrush handle. At 9:09 p.m., Sgt. Dunn communicated a "Condition Medical" to a medical response team which immediately arrived on the scene. Prison officials took plaintiff to the medical clinic, where he received eight stitches.

At 9:20 p.m., Lt. Brown learned that plaintiff had been injured and that Lyman was a suspect. He therefore investigated the scene and directed Sgt. Dunn to prepare various incident reports. Sgt. Dunn informed Lt. Brown that inmates returning from the medication line had seen blood on the floor and explained that it was "snitch blood."

Lt. Brown then visited plaintiff at the medical clinic, where he photographed plaintiff's injuries prior to his sutures. Plaintiff maintains that Lt. Brown visited the clinic a second time that evening, asked the nurse to leave the room, told plaintiff about the warning note, and (based on his prior experience in the Kansas State Police Graphology Department) expressed his belief that Lyman was the author.

The next day, August 13, 1994, Lt. Brown interviewed plaintiff in the clinic. Plaintiff told him that Sgt. Dunn had seen the attack but did not intervene or stop it. Sgt. Dunn denies this allegation with sworn testimony.

That same day, Lt. Brown also questioned Lyman—who ultimately confessed to writing the warning note and attacking plaintiff. Lyman maintained that he and plaintiff had struggled for control of the weapon and that blows were struck.

Sgt. Dunn walked by plaintiff's cell between 3:00 p.m. and 11:00 p.m. that day and,

---

**3.** Plaintiff voluntarily dismissed his claims against Warden Robert Hannigan. See *Order* (Doc. # 48) filed May 2, 1996.

**4.** Plaintiff was transferred to LCF on February 14, 1997. During a routine inspection upon plaintiff's arrival, LCF personnel found unauthorized items in a cardboard box which belonged to him. After a cursory inspection, LCF personnel confirmed that the box also contained legal research materials, but determined that they did not require plaintiff's immediate attention. LCF

retained plaintiff's materials from February 20 until March 7, 1997.

In his motion requesting injunctive relief, plaintiff alleges that LCF and Ms. Jackson denied him access to the courts when they withheld his box of materials. LCF and Ms. Jackson, however, are not parties to this suit, and the Court therefore does not have jurisdiction over them. Plaintiff's allegations concerning LCF and Ms. Jackson are accordingly not discussed further in this order.

according to plaintiff, threatened him for complaining that Sgt. Dunn had failed to act during the attack. Plaintiff alleges that Sgt. Dunn also threatened him on August 14, 1994, but the record reflects that Sgt. Dunn was stationed in a different facility from that of plaintiff at that time.

### Summary Judgment Standards

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When deciding a summary judgment motion, the Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The initial burden of demonstrating want of genuine issue of material fact rests with the movant. Showing lack of evidence to support a nonmovant's case discharges this burden. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A "material" fact is one "that might affect the outcome of the suit under governing law," and the issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Analysis [5]

Prisoners have a constitutional right under the Eighth Amendment to reasonable protection from attacks by other inmates. *Berry v. City of Muskogee, Okla.,* 900 F.2d 1489, 1498 (10th Cir.1990). *See also Blankenship v. Meachum,* 840 F.2d 741, 742 (10th Cir.1988) (failure to protect inmate from attacks by other inmates may rise to Eighth Amendment violation). A failure to protect claim must be evaluated under the deliberate indifference standard of *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), as reiterated recently in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *MacKay v. Farnsworth,* 48 F.3d 491, 493 (10th Cir.1995), quoting *Farmer,* 511 U.S. at 847, 114 S.Ct. at 1984. Prison officials who know of a substantial risk to inmate safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer,* 511 U.S. at 844–45, 114 S.Ct. at 1982–83.

Plaintiff alleges that Lt. Brown's response to the note which threatened plaintiff's safety was inadequate in view of the risk that Lyman would attack plaintiff. Plaintiff states that restricting Lyman's yard privileges and searching Lyman on August 11 was not enough and that interviewing Lyman about the note on August 12 only gave Lyman notice that he could attack

---

**5.** Although plaintiff also alleges that defendants' conduct violated his rights under the Fifth and Fourteenth Amendments, his claim—which is essentially a cruel and unusual punishment claim—is properly analyzed under the Eighth Amendment. The Fifth and Fourteenth Amendments prohibit punishment prior to an adjudication of guilt in accordance with due process of law. *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979). The Fifth Amendment protects against deprivations of life, liberty or property by the federal government, which plaintiff does not allege in this case. *See Berry v. City of Muskogee, Okla.,* 900 F.2d 1489, 1492 n. 2 (10th Cir.1990). Moreover, where government conduct is constrained by an explicit

textual source of constitutional protection—such as the Eighth Amendment's prohibition against cruel and unusual punishment—"that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 1494, citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). While cases involving the safety and bodily integrity of convicted prisoners implicate both the Eighth and the Fourteenth Amendment, the Eighth Amendment provides the primary source of protection, and the standards under the two amendments are identical. *Berry,* 900 F.2d at 1494 n. 6. The Court therefore applies Eighth Amendment standards in evaluating plaintiff's claims.

plaintiff when Lt. Brown was not around. Plaintiff also states that defendants should have warned him of the impending attack and that they should have searched Lyman on August 12, before they released him to the medication line.

Defendants maintain that by segregating Lyman and searching his cell on August 11, Lt. Brown acted appropriately after receiving the note. Defendants argue that these actions demonstrate that Lt. Brown was not deliberately indifferent to plaintiff's safety.

In his sworn affidavit, Sgt. Dunn avers that during the attack he was standing at the cellhouse door, observing what he thought to be all of the inmates exit B 1–Cellhouse into the Rotunda. He then walked to the officer's station and heard an inmate behind him asking for Tylenol. He turned around to realize that plaintiff was behind him requesting a towel, not Tylenol, and that he was covered with blood. Sgt. Dunn avers this was the first he knew of the attack.

Plaintiff claims that Sgt. Dunn and ten to fifteen inmates saw the attack. He states that Sgt. Dunn was in the immediate vicinity of the attack and that he did nothing to intervene or to summon help. Plaintiff claims that testimony of the inmate witnesses will prove Sgt. Dunn's affidavit to be false and that photographs taken by Sgt. Tiedtke will conclusively show that from his vantage point, Sgt. Dunn could not have avoided seeing the attack. Plaintiff alleges that Sgt. Dunn's failure to react to Lyman's attack on plaintiff evidences deliberate indifference to plaintiff's safety.

While the Court accords prison administrators wide-ranging deference in preserving internal order and discipline and maintaining institutional security, *see Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979), we cannot say as a matter of law that defendants' actions in this instance were reasonable. Indeed, viewing the facts in a light most favorable to plaintiff, as the Court must do at the summary judgment stage, questions of fact remain as to the reasonableness of the actions of both Sgt. Dunn and Lt. Brown.

The mere showing that an assault occurred will of course not be sufficient for plaintiff to prevail in this action, nor will mere negligence suffice to support a constitutional claim. *See Counce v. Goings,* 816 F.Supp. 674, 675 (D.Kan.1993). Defendants have failed to demonstrate that there is no genuine issue as to any material fact, however, or that the evidence is such that a reasonable jury could not return a verdict for plaintiff.

**IT IS THEREFORE ORDERED** that plaintiff's *Motion to File Response to Summary Judgment Out of Time* (Doc. # 61) filed October 28, 1996, be and hereby is sustained.

**IT IS FURTHER ORDERED** that *Defendants' Motion For Summary Judgment* (Doc. # 59) filed October 1, 1996, be and hereby is overruled.

**IT IS FURTHER ORDERED** that plaintiff's *Motion for Stay of Proceedings* (Doc. # 68) filed February 27, 1997; plaintiff's *Motion and Brief in Support of Injunction* (Doc. # 69) filed March 4, 1997; and plaintiff's *Motion to Supplement Motion for Injunction* (Doc. # 72) filed March 17, 1997, be and hereby are overruled.